Ian A. Stewart (State Bar No. 250689)
 *Ian.Stewart@wilsonelser.com*
Dean A. Rocco (State Bar No. 210481)
 *Dean.Rocco@wilsonelser.com*
**WILSON, ELSER, MOSKOWITZ,
   EDELMAN & DICKER LLP**
555 Flower Street, Suite 2900
Los Angeles, California 90071-2407
Telephone:(213) 443-5100
Facsimile: (213) 443-5101

**Attorneys for Plaintiffs,
SIVA ENTERPRISES and
AVIS BULBULYAN**

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SIVA ENTERPRISES, a California corporation, and AVIS BULBULYAN, an individual, | **Case No.** |
| Plaintiffs, | **COMPLAINT FOR:** |
| v. | **(1) MISAPPROPRIATION OF TRADE SECRETS;** |
| LANCE OTT, an individual; DAVID YEAGER, an individual; STEVE BAGHOOMIAN, an individual; CIRRATA VENTURES LLC; and DOES 1 through 25, inclusive, | **(2) UNAUTHORIZED ACCESS TO COMPUTERS, COMPUTERS SYSTEMS AND COMPUTER DATA;** |
| Defendants. | **(3) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS;** |
| | **(4) NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS;** |
| | **(5) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATION;** |

**(6) CONVERSION;**
**(7) CIVIL CONSPIRACY**
**(8) BREACH OF FIDUCIARY DUTY;**
**(9) CONCEALMENT;**
**(10) VIOLATION OF STATUTORY OBLIGATIONS OF EMPLOYEES;**
**(11) UNFAIR COMPETITION;**
**(12) HONEST SERVICES FRAUD;**
**(12) DEFAMATION;**
**(13) TRADE LIBEL;**
**(14) BREACH OF CONTRACT;**
**(15) MONEY HAD AND RECEIVED, AND**
**(14) DECLARATORY JUDGMENT**

## I. INTRODUCTION

Plaintiff SIVA Enterprises is an established and recognized leader in the cannabis industry in California and other states, providing consulting, licensing and compliance, as well as product and brand development services to its many valued clients.  This is an action by Siva Enterprises and its Chief Executive Officer, Plaintiff Avis Bulbulyan, against several of its former officers and employees who illegally conspired to, and did, loot the company of its proprietary data and maliciously used that data to start a rival company to unfairly compete against Siva Enterprises.

## II. THE PARTIES

1.     At all times herein mentioned, Plaintiff SIVA Enterprises (hereinafter "SIVA") was and is a corporation organized and existing under the laws of the State of California, with its principal place of business in Glendale, California.

2.     At all times herein mentioned, Plaintiff Avis Bulbulyan (hereinafter

"BULBULYAN") was and is an individual, residing in the County of Los Angeles, State of California. BULBULYAN is  SIVA's founder and Chief Executive Officer.

3.     Upon information and belief, at all times mentioned herein, Defendant Lance Ott ("OTT"), was and is an individual, residing in the County of Los Angeles, State of California. OTT was SIVA's Chief Strategy Officer and Vice President of Business Development.

4.     Upon information and belief, at all times mentioned herein, Defendant David Yeager  ("YEAGER"), was and is an individual, residing in the County of Los Angeles, State of California. YEAGER was SIVA's Chief Operating Officer.

5.     Upon information and belief, all times mentioned herein, Defendant Steve Baghoomian ("BAGHOOMIAN"), was and is an individual, residing in the County of Los Angeles, State of California. BAGHOOMIAN was SIVA's Vice President of Licensing and Compliance. The term "OFFICER DEFENDANTS" as used below shall mean and refer to Defendants OTT, YEAGER and BAGHOOMIAN.

6.     CIRRATA VENTURES LLC (hereinafter "CIRRATA") was and is a limited liability corporation organized and existing under the laws of the State of California, with its principal place of business in Los Angeles, California.  The OFFICER DEFENDANTS are members of CIRRATA.

7.     Upon information and belief, all times mentioned herein, Defendant Colton Dane Lasater ("LASATER"), was and is an individual, residing in the County of Los Angeles, State of California. LASATER was SIVA's Brand Manager/Creative Director.

8.     Upon information and belief, all times mentioned herein, Defendant Charlie Christopher ("CHRISTOPHER"), was and is an individual, residing in the County of Los Angeles, State of California. CHRISTOPHER was SIVA's Finance

Manager.

Plaintiffs are ignorant of the true names or capacities of the defendants sued herein under the fictitious names Does 1 through 25, inclusive. It is believed, however, that other individuals may also have been involved in the wrongful acts described above and below, including by conspiring with other named defendants. Plaintiffs therefore reserve the right to amend this Complaint to assert claims against additional defendants when and as appropriate. The term "DEFENDANTS" as used bellow shall collectively mean and refer to both named and unnamed defendants.

## III. JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this is an action arising under the laws of the United States, and pursuant to 18 U.S.C. §§ 1341, 1343, 1346 and 1836(d), and 15 U.S.C. § 1125(a).  This Court has subject matter jurisdiction over the non-federal claims pursuant to 28 U.S.C. § 1367, as those claims form part of the same case or controversy as the claims based on the laws of the United States.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events, breaches or omissions giving rise to the claim occurred in this judicial district, and because at least one of the DEFENDANTS maintain a residence, and at all relevant times in the past have conducted business in, Los Angeles County.

11.     This Court has personal jurisdiction over the DEFENDANTS, and each of them, because they are residents of and/or doing business in the County of Los Angeles, State of California.

## IV. BACKGROUND FACTS

### A. Siva Enterprises

12.     SIVA Enterprises provides a full suite of business solutions and operational services for the cannabis industry nationwide. Its services include

3114520v.2

consulting, local and state licensing, compliance, brand development, product and brand development, manufacturing and distribution. SIVA's founder and Chief Executive Officer ("CEO"), Plaintiff BULBULYAN, entered the cannabis industry in 2007, beginning in the cultivation sector and expanding into dispensing and consulting in Southern California then nationally starting in 2012. Over a decade of work by BULBULYAN providing consulting and operational services made SIVA one of the most successful companies in obtaining state licensing applications. Today, SIVA is a reputable company in the cannabis industry and recognized as one of the top cannabis consulting firms in the United States. SIVA clients are well-known and high grossing companies in the cannabis industry.

13.    As the CEO, BULBULYAN oversees corporate direction, business development and strategy for SIVA. He is an appointed member of California's Cannabis Advisory Committee for the Bureau of Cannabis Control under The Department of Consumer Affairs and serves as the President of the Los Angeles Cannabis Task Force, working with local city officials and community on the development of city ordinances within Los Angeles. BULBULYAN is also a sought-after expert and speaker in the cannabis industry, including for such groups such as the Los Angeles County Bar Association and the National Cannabis Bar Association.

14.    SIVA's valuable, confidential, proprietary and trade secret information is not generally known to the public and the result of much time, effort and expense and investment by BULBULYAN. Such information includes a listing of SIVA's clients and their contact information, the identities of key decision makers at each client, the sensitive needs and preferences of each client, details as to the types of services needed by the clients, on-boarding documents, SIVA's business strategies and comprehensive operations manuals, business plans, accumulated market data, financial modeling workbook, other form templates, as well as other confidential and proprietary information. This information is referred

3114520v.2

1    to below as SIVA's "Confidential Business Information."

2    **B. <u>Siva Hires the Officer Defendants</u>**

3    15.    In or around August 2017, BULBULYAN needed additional

4 management personnel for SIVA due to an increase in the number of SIVA's

5 clients and corresponding work demands, as well as BULBULYAN's

6 commitments as the President of the Los Angeles Cannabis Task Force, state

7 advisory work, and various speaking and community engagements promoting

8 SIVA's services

9    16.    BULBULYAN had known OTT since 2014, and the two had

10 developed a professional friendship as well as a personal one, and often attended

11 the same industry conferences. BULBULYAN brought OTT on as SIVA's Chief

12 Strategy Officer and Vice President of Business Development in or about October

13 2017 to help OTT financially as well as to assist OTT with entering the California

14 cannabis market.  When hired, OTT was paid on a draw basis against future

15 commissions for referrals.  OTT was placed in a position of trust and was

16 responsible for working to develop a strategic plan to advance the company and

17 promote revenue, overseeing the daily management of the business development

18 team and initiatives, devising strategies for driving sales growth, identifying sales

19 opportunities for SIVA, negotiating sales contracts with SIVA's clients, and

20 promoting the company through written articles and personal appearances at

21 conferences, tradeshows and events. After failing to produce over several months,

22 OTT's pay structure was changed from a draw to a more stable payroll structure to

23 further accommodate OTT's personal financial circumstances and to further assist

24 with his transition into the California market.

25    17.    In or about early November 2017, BAGHOOMIAN was hired by

26 BULBULYAN as SIVA's Vice President of Licensing and Compliance, a position

27 of trust.

28    18.    In August 2017, BULBULYAN began speaking with YEAGER about

3114520v.2

hiring YEAGER as SIVA's Chief Operating Officer ("COO"). YEAGER started as SIVA's COO on January 2, 2018.

19.    As the COO, YEAGER was also placed in a position of trust and oversaw the daily operations of the business, had access to company financial data and servers, and had at least five employees who reported to him. He also worked closely with BULBULYAN and BAGHOOMIAN on SIVA's annual operating plan to support the company's operations and strategies, thus giving YAEGER access to SIVA's confidential and proprietary information, including but not limited to the company's financial information, marketing strategies, and client lists.

## C. The Officer Defendants Conspire to Steal Business for Themselves

20.    OFFICER DEFENDANTS' plan to steal SIVA's clients began at the latest in or about January 2018, and perhaps as early as October 2017.  Starting in or around January 2018, YEAGER, BAGHOOMIAN and OTT actively searched for a commercial property space to lease for the competing business that they were in the process of establishing.  Throughout January 2018, the OFFICER DEFENDANTS regularly used their SIVA email addresses to communicate with real estate brokers and agents, during business hours, about potential commercial properties that would be suitable for their competing business.

21.    While pretending to work for the benefit of SIVA and its clients, OFFICER DEFENDANTS also researched and planned their competing business. For example, in a January 30, 2018 email exchange between OTT and BAGHOOMIAN, OTT forwarded an article to BAGHOOMIAN about mergers and acquisitions in the cannabis industry. BAGHOOMIAN, a licensed attorney, responded that he had been doing his "due diligence" and could confirm that he could "broker deals" as long as he could provide some other legal service along with the deal. BAGHOOMIAN then told OTT in the email "[l]et's get this party started!"  Throughout his employment with SIVA, BAGHOOMIAN had stated that

he could provide no legal services on behalf of SIVA.

22.    On or about January 17, 2018, a proposal was circulated between YEAGER and a company named Tokr for business services to be provided by a company called Damanant which is owned by YEAGER.  YEAGER is an investor and shareholder in Tokr.  From January through March 2018, YEAGER and OTT used SIVA's reputation, resources, and contacts to actively fund raise for Tokr.

23.    YEAGER also hired his friends and contacts to work at SIVA. YEAGER hired his friend LASATER as SIVA's Application Consultant in or about mid-February 2018. YEAGER also hired his friend CHRISTOPHER as SIVA's Financial Analyst.

24.    LASATER and CHRISTOPHER both executed Contracts of Engagement when hired to work at SIVA. (True and correct copies of the Contracts of Engagement are attached to the Complaint as Exhibits "A" and "B", respectively)  CHRISTOPHER executed a Contract on February 19, 2018, and LASATER executed a Contract on March 5, 2018.  The Contracts state in relevant part:

> "Now, therefore, in consideration of the faithful performance of the obligations set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, *The Consultant* [LASATER/CHRISTOPHER] and *The Client* [SIVA] hereby agree as follows.
>
> **6.  Confidentiality Agreement**.  In the event *The Client* discloses information to The Consultant that *The Client* considers to be secret, proprietary or nonpublic (collectively "Confidential Information") and so notifies *The Consultant*, *The Consultant* agrees to hold such Confidential Information in confidence.  Confidential Information shall be used by *The Consultant* only in connection with the services rendered by it under this Agreement and shall not be disseminated

without *The Client*'s written approval, which shall be within *The Client*'s sole discretion.  Confidential information shall not be deemed to include which a) is in or becomes in the public domain without violation of this Agreement by *The Client*, or b) is rightfully received from a 3rd party having no obligation to *The Client* to keep such information confidential and without violation of this Agreement.  In reciprocal, *The Client* agrees to hold confidential all trade secrets of the proprietary methods employed by *The Consultant* in fulfillment of the services it renders pursuant to this Agreement that are designated as trade secrets or proprietary methods by *The Consultant* in writing to *The Client*."

25.    OFFICER DEFENDANTS and, upon information and belief LASATER and CHRISTOPHER, diverted both active SIVA clients and potential SIVA clients away from SIVA by offering those clients competing services from other side businesses in which they were involved, including but not limited to Bankcard Brokers and Guardian Data Systems.  Long-standing SIVA clients who were known to be loyal to BULBULYAN and less likely to follow OFFICER DEFENDANTS to a competitor business were ignored by the OFFICER DEFENDANTS, LASATER and CHRISTOPHER. OFFICER DEFENDANTS also regularly failed to deliver on promises to these clients of SIVA, wrongfully blaming BULBULYAN for their own failures in order to cause the clients to believe that BULBULYAN was inattentive and to cause the clients to take their business elsewhere or provide an opportunity for OFFICER DEFENDANTS to step in and "save the day" by stealing said clients.

26.    OFFICER DEFENDANTS and, upon information and belief LASATER and CHRISTOPHER, communicated with less established SIVA clients in emails that purposefully excluded BULBULYAN for the purpose of establishing client relationships that did not include BULBULYAN or moved the

1  conversations to private Google mail accounts so the conversations would not be

2  discovered. For the same reason, OFFICER DEFENDANTS regularly scheduled

3  meetings with clients in a manner that ensured BULBULYAN was not able to

4  attend.

5       27.    In or about January 2018, BAGHOOMIAN began asking

6  BULBULYAN to introduce him to people in the industry.  In a January 26, 2018

7  email, BAGHOOMIAN asked BULBULYAN to introduce him to any contacts

8  BULBULYAN had in the Burbank City Council purportedly so that he could

9  "increase [his] income through referrals and business development." In reality,

10  BAGHOOMIAN's goal was to use BULBULYAN's connections for the benefit of

11  the competing business venture he was working on with OTT and YEAGER.

12  From January through March 2018, and through the present, OFFICER

13  DEFENDANTS used SIVA's and BULBULYAN's resources and contacts to

14  establish credibility and relevance for themselves, including by gaining access to

15  committees in different associations, working groups such as the West Hollywood

16  banking group, the regulatory advisory board of the LA Cannabis Task Force, the

17  California Cannabis Bar Association, Arcview Investment Group, and others.

18       28.    Upon information and belief, Defendants OFFICER DEFENDANTS

19  also wrongfully diverted emails relating to certain topics away from

20  BULBULYAN by creating a "rule" in Microsoft Outlook so that certain emails

21  containing the words "deliver," "failure," "cpanel," "verification," "overdue,"

22  "wire," "invoice," "file," "one drive," and "onedrive" sent to BULBULYAN's

23  assistant would be immediately deleted without being seen.  This was done for the

24  purpose of preventing BULBULYAN from receiving emails regarding wire

25  requests to the SIVA Controller.  This scheme allowed OFFICER DEFENDANTS

26  to deceive SIVA's Controller into paying unknown invoices by making it look like

27  they were legitimate invoices of which BULBULYAN was aware and approved

28  since his assistant was copied on the communication.  Specifically,

BULBULYAN's assistant was copied on the subject emails, though she did not receive them or make BULBULYAN aware of them as a result of the rule created in Outlook that deleted the emails without being seen.

29.   Analysis of an audit log of SIVA's computer servers confirms that on March 20, 2018, three days before OTT's resignation, and while BULBULYAN was at a conference in Sacramento, California, OTT spent the day surreptitiously copying confidential documents from SIVAS's servers and misappropriating them by emailing the documents to OTT's personal email address. The documents misappropriated and stolen by OTT include client contact lists with proprietary information, onboarding documents, company operation manuals, pitch decks, SIVA's financial workbook, business plans, templates developed by BULBULYAN used to provide services to clients, contracts and other confidential materials.  OTT also misappropriated and stole copies of contracts and templates of proprietary documents and forms.  The confidential business information OTT illegally stole provided a roadmap into SIVA's business strategies and client management techniques that BULBULYAN has spent over a decade developing and perfecting.  The stolen property also provided OFFICER DEFENDANTS with a foundational and complete document library to start a competing business with material used to successfully secure state licenses in the most regulated and competitive markets.

30.   That same day, March 20, 2018, YEAGER sent an email to OTT, BAGHOOMIAN, LASATER and CHRISTOPHER with a list of SIVA's clients and prospective clients, stating that the list included  "a lot of prospects" that SIVA needed to close. Upon information and belief, this email was simply a pretext for OFFICER DEFENDANTS to gain access to a complete list of SIVA's clients and prospects without raising suspicion.

31.   Three days later, on March 23, 2018, OTT resigned from his position at SIVA. YEAGER continued to communicate with OTT using his SIVA email

3114520v.2

account following OTT's resignation.

32.    YEAGER was suspended by BULBULYAN on March 28, 2018, following an altercation with a female SIVA employee wherein YEAGER intimidated and threatened her to the point where police were contacted.

33.    In the days prior to his suspension, YAEGER actively transferred Confidential Business Information from SIVA's computer files to his personal email, as well as to his new CIRRATA employee email that had been created for himself.  During the period prior to his suspension, YEAGER also contacted SIVA vendors and service providers to change primary contact information as well as cancelling services essential to SIVA operations in an attempt to sabotage and create chaos after OFFICER DEFENDANTS departed.

34.    After his suspension, YEAGER logged into SIVA's Customer Relationship Management (CRM) system, known as Agile, and illegally exported 59 deal files relating to SIVA's customers. The subject files contained confidential information about these 59 SIVA accounts.  YEAGER then proceeded to modify remaining files by changing the account names, deleting files, and changing administrator settings to prevent BULBULYAN from being able to gain access to the system.

35.    One day after his suspension, on March 29, 2018, Defendant YEAGER contacted Posture, the company that YEAGER had engaged to work on SIVA's website, and instructed the company to reverse work that had been performed on the SIVA website. BULBULYAN received a notice from Asana, a project management software, that the project by Posture was being placed on "yellow status."  YAEGER was materially assisted in these efforts by LASATER.

36.    YEAGER's employment was terminated on March 30, 2018.

37.    Subsequently, by April 7, 2018, BULBULYAN had taken control of the SIVA email accounts and on April 7, 2018, a message from Asana, which had been intended for YEAGER and LASATER, was received with an update from

Posture that the website project was being placed on "red status." The message inputted from Posture explained that the reason for the "red status" was "**stakeholders started new venture, transferring contracts +untangling web setup**." (emphasis added)  Thereafter, the changes to SIVA's website made by Posture were undone, despite the fact that Posture had been paid for the work by SIVA.  Posture then proceeded to contact SIVA to demand the balance of their retainer be paid per their contract.

38.    BAGHOOMIAN's employment was terminated on March 30, 2018. On the day of his termination, and during his suspension period, BAGHOOMIAN contacted SIVA clients for updates and information using a personal email address. He deceptively stated that he was home with the flu and was having "technical difficulties" with SIVA's server. BAGHOOMIAN requested that clients respond to his personal email "in case [his] SIVA emails" didn't reach him. BAGHOOMIAN's personal email address was masked with Baghoomian Law as the sender and was intended a wrongful solicitation of SIVA clients.

39.    For several weeks prior to their respective suspensions, YAEGER and BAGHOOMIAN instructed staff at SIVA not to copy BULBULYAN on emails, and not to bother BULBULYAN with certain client issues on the false premise that BULBULYAN was under stress and was working on a large project.  These statements and instructions to SIVA staff were made for the improper purpose of preventing communications between BULBULYAN, SIVA staff and SIVA clients.

40.    LASATER and CHRISTOPHER both abandoned their jobs at SIVA on April 2, 2018, after submitting final invoices for payment. LASATER and CHRISTOPHER later made false written statements as to the circumstances surrounding their collective departure in support of unemployment claims made by YEAGER.

41.    The foregoing confidential, proprietary trade secret information described above is valuable property that belongs solely and exclusively to SIVA,

not any of the DEFENDANTS. The subject confidential, proprietary trade secret information is hereinafter referred to as the "Confidential Business Information." SIVA took reasonable steps to protect the Confidential Business Information. The OFFICER DEFENDANTS wrongfully accessed, misappropriated and converted the Confidential Business Information without knowledge of or authority from SIVA or BULBULYAN.

**D. Officer Defendants' Unsuccessful Attempts to Cover their Tracks**

42.    OFFICER DEFENDANTS acted with knowledge that their wrongful access and theft of SIVA Confidential Business Information was illegal and hostile to the ownership rights of SIVA.  Accordingly, each of them made efforts to conceal their theft and cover their tracks.

43.    In the days and weeks leading up to his departure, OTT deleted incriminating emails from his email account.  Because YEAGER and BAGHOOMIAN apparently did not expect to be terminated, they were unable to delete all incriminating emails.  Thus, despite the efforts taken by OFFICER DEFENDANTS to conceal their theft, SIVA's investigation reveals substantial details of theft by each of the OFFICER DEFENDANTS, as set forth above, as well as strong corroborating evidence of coordination and conspiracy between the OFFICER DEFENDANTS, LASATER and CHRISTOPHER to misappropriate and convert SIVA's intellectual property and Confidential Business Information sufficient to build and maintain a competing business.  OTT's emails were deleted, but conversations and threads were discovered through YEAGER's and BAGHOOMIAN's accounts.  Furthermore, where OFFICER DEFENDANTS used personal Google mail accounts to avoid discovery and detection by SIVA, BAGHOOMIAN connected his Google mail account to his office outlook account that runs on SIVA servers, therefore leaving behind evidence the OFFICER DEFENDANTS intended to conceal.

/ / /

3114520v.2

**E.  Defendants are now Using Stolen Data to Compete with SIVA**

44.    On March 22, 2018, while still employed by SIVA, BAGHOOMIAN sent OTT a consulting agreement for Cirrata Ventures LLC ("CIRRATA"), a new company created to unfairly compete with SIVA.  OTT, YAEGER, BAGHOOMIAN, LASATER and CHRISTOPHER are listed as a co-founders on the company's website at www.Cirrata.com.  BAGHOOMIAN is also described as "the expert who experts turn to" in the cannabis industry.  An analysis of the registration date for CIRRATA's web address reveals that one or more of the OFFICER DEFENDANTS registered for the domain address on March 12, 2018, while they were all employed by and officers of SIVA.

45.    Based on the information on CIRRATA's website, CIRRATA directly competes with SIVA by providing the same cannabis-focused licensing, consulting and branding services offered by SIVA.

46.    DEFENDANTS are using the Confidential Business Information wrongfully and illegally acquired from SIVA to unfairly compete with SIVA using SIVA's trade secrets, and to divert and take away the prospective and current customers of SIVA.

47.    DEFENDANTS have wrongfully used SIVA's Confidential Business Information to contact and solicit customers of SIVA, with the intent to unfairly compete with SIVA using SIVA's trade secrets, and to divert and take away the prospective and current customers of SIVA.

48.    Since the departure of OFFICER DEFENDANTS, LASATER and CHRISTOPHER from SIVA, certain SIVA clients solicited by DEFENDANTS using SIVA's Confidential Business Information have contacted SIVA and terminated or attempted to terminate their contracts with SIVA.

49.    DEFENDANTS would not have been able to start a functioning business in competition with SIVA without the stolen SIVA Confidential Business Information.

3114520v.2

50.    The aforementioned wrongful acts of the DEFENDANTS were performed in furtherance of, in the interests of, for the benefit of, and as principals, employees and/or agents of CIRRATA, such that CIRRATA is vicariously liable for all wrongful acts of the OFFICER DEFENDANTS, LASATER and CHRISTOPHER.

**F.**  **Defendants are Actively Disparaging SIVA and BULBULYAN**

51.    Since their departure, DEFENDANTS have continued to disparage BULBULYAN and SIVA by making the numerous false statements to SIVA's clients, including but not limited to:

        A.    BULBULYAN is a "conman";

        B.    BULBULYAN is depressed and "losing it";

        C.    BULBULYAN is going through a tough time and therefore losing all his clients;

        D.    BULBULYAN is going through a divorce;

        E.    BULBULYAN is not the same as he used to be;

        F.    SIVA has run out of money and is unable to pay its employees;

        G.    SIVA is not capable of servicing its clients properly;

        H.    SIVA is liquidating and closing their doors;

        I.    OTT relocated to Los Angeles from Vancouver, Washington to help his friend BULBULYAN in BULBULYAN's time of need.

52.    DEFENDANTS used BULBULYAN's work ethic to substantiate their false statements by alleging the above-mentioned as the reason for BULBULYAN spending over 110 hours a week in the office.

53.    Upon information and belief, in addition to defaming BULBULYAN and SIVA to clients, DEFENDANTS have also posted defamatory and false reviews on Glassdoor.com, and Yelp.com, calling BULBULYAN a "compulsive liar," a "conman extraordinaire," a "scam artist" and a "two bit hustler" and

claiming that SIVA "ripped off" clients, among other false statements.

## V. FIRST CAUSE OF ACTION

## MISAPPROPRIATION OF TRADE SECRETS

**(18 U.S.C. §§ 1836 *et seq.,* Against All DEFENDANTS and**

**DOES 1 through 25)**

54.     Plaintiffs repeat and incorporate by this reference the allegations contained in all of the foregoing Paragraphs as though set forth here in full.

55.     SIVA owned Confidential Business Information. SIVA's Confidential Business Information is trade secret because it derives independent economic value from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use.

56.     DEFENDANTS gained access to SIVA's Confidential Business Information in the course of an employee-employer relationship between SIVA and the EMPLOYEE DEFENDANTS.  DEFENDANTS were under an obligation to maintain the secrecy of the Confidential Business Information obtained during their employment.

57.     SIVA took reasonable precautions under the circumstances to protect its Confidential Business Information and maintain its secrecy, and all parties with access to the Confidential Business Information were subject to a duty to maintain its secrecy

58.     SIVA is informed and believes, and thereon alleges, that DEFENDANTS have and continue to improperly use and disclose SIVA's Confidential Business Information to third parties without SIVA's consent or permission, in an attempt to wrongfully benefit the DEFENDANTS.

59.     SIVA is informed and believes, and thereon alleges, that DEFENDANTS have disclosed SIVA's Confidential Business Information to third parties intentionally, maliciously and in willful and conscious disregard of the rights of SIVA.

3114520v.2

60.    As a direct and proximate result of DEFENDANTS' intentional, willful, improper, and unlawful use and disclosure of SIVA's Confidential Business Information, SIVA has suffered, and will continue to suffer, great harm and damages.    SIVA will continue to be irreparably damaged unless DEFENDANTS are enjoined from further use and disclosure of SIVA's Confidential Business Information.

61.    As a direct and proximate result of DEFENDANTS' intentional, willful, improper, and unlawful use and disclosure of SIVA's Confidential Business Information, DEFENDANTS have derived, received, and will continue to derive and receive unjust gains, profits, and advantages, many of which are not presently known to SIVA.  DEFENDANTS will continue to be unjustly enriched unless they are enjoined from further use and disclosure of SIVA's Confidential Business Information.

62.    SIVA is therefore entitled to damages as provided by law, as well as injunctive relief.

63.    The aforementioned acts of DEFENDANTS, in wrongfully misappropriating SIVA's Confidential Business Information, were and continue to be intentional, willful and malicious, warranting an award of exemplary damages.

## V. SECOND CAUSE OF ACTION
## MISAPPROPRIATION OF TRADE SECRETS
### (California Civil Code  §§ 3426. *et seq.,* Against All DEFENDANTS and DOES 1 through 25)

64.    Plaintiffs repeat  and incorporate by this reference the allegations contained in all of the foregoing Paragraphs as though set forth here in full.

65.    SIVA owned Confidential Business Information.  SIVA's Confidential Business Information is trade secret because it derives independent economic value from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use.

3114520v.2

66.    DEFENDANTS gained access to SIVA's Confidential Business Information in the course of an employee-employer relationship between SIVA and the EMPLOYEE DEFENDANTS.  DEFENDANTS were under an obligation to maintain the secrecy of the Confidential Business Information obtained during their employment.

67.    SIVA took reasonable precautions under the circumstances to protect its Confidential Business Information and maintain its secrecy, and all parties with access to the Confidential Business Information were subject to a duty to maintain its secrecy

68.    SIVA is informed and believes, and thereon alleges, that DEFENDANTS have and continue to improperly use and disclose SIVA's Confidential Business Information to third parties without SIVA's consent or permission, in an attempt to wrongfully benefit the DEFENDANTS.

69.    SIVA is informed and believes, and thereon alleges, that DEFENDANTS have disclosed SIVA's Confidential Business Information to third parties intentionally, maliciously and in willful and conscious disregard of the rights of SIVA.

70.    As a direct and proximate result of DEFENDANTS' intentional, willful, improper, and unlawful use and disclosure of SIVA's Confidential Business Information, SIVA has suffered, and will continue to suffer, great harm and damages.    SIVA will continue to be irreparably damaged unless DEFENDANTS are enjoined from further use and disclosure of SIVA's Confidential Business Information.

71.    As a direct and proximate result of DEFENDANTS' intentional, willful, improper, and unlawful use and disclosure of SIVA's Confidential Business Information, DEFENDANTS have derived, received, and will continue to derive and receive unjust gains, profits, and advantages, many of which are not presently known to SIVA.  DEFENDANTS will continue to be unjustly enriched

unless they are enjoined from further use and disclosure of SIVA's Confidential Business Information.

72.    SIVA is therefore entitled to damages as provided by law, as well as injunctive relief.

73.    The aforementioned acts of DEFENDANTS, in wrongfully misappropriating SIVA's Confidential Business Information, were and continue to be intentional, willful and malicious, warranting an award of exemplary damages, as provided by Cal. Civ. Code § 3426.3(c), and an award of reasonable attorneys' fees, as provided by Cal. Civ. Code § 3426.4.

## V. THIRD CAUSE OF ACTION
## COMMON LAW MISAPPROPRIATION OF TRADE SECRETS
### (Against All DEFENDANTS and DOES 1 through 25)

74.    Plaintiffs repeat and incorporate by this reference the allegations contained in all of the foregoing Paragraphs as though set forth here in full.

75.    SIVA owned Confidential Business Information. SIVA's Confidential Business Information is trade secret because it derives independent economic value from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use.

76.    DEFENDANTS gained access to SIVA's Confidential Business Information in the course of an employee-employer relationship between SIVA and the EMPLOYEE DEFENDANTS.  DEFENDANTS were under an obligation to maintain the secrecy of the Confidential Business Information obtained during their employment.

77.    SIVA took reasonable precautions under the circumstances to protect its Confidential Business Information and maintain its secrecy, and all parties with access to the Confidential Business Information were subject to a duty to maintain its secrecy

78.    SIVA is informed and believes, and thereon alleges, that

3114520v.2

DEFENDANTS have and continue to improperly use and disclose SIVA's Confidential Business Information to third parties without SIVA's consent or permission, in an attempt to wrongfully benefit the DEFENDANTS.

79.   SIVA is informed and believes, and thereon alleges, that DEFENDANTS have disclosed SIVA's Confidential Business Information to third parties intentionally, maliciously and in willful and conscious disregard of the rights of SIVA.

80.   As a direct and proximate result of DEFENDANTS' intentional, willful, improper, and unlawful use and disclosure of SIVA's Confidential Business Information, SIVA has suffered, and will continue to suffer, great harm and damages.   SIVA will continue to be irreparably damaged unless DEFENDANTS are enjoined from further use and disclosure of SIVA's Confidential Business Information.

81.   As a direct and proximate result of DEFENDANTS' intentional, willful, improper, and unlawful use and disclosure of SIVA's Confidential Business Information, DEFENDANTS have derived, received, and will continue to derive and receive unjust gains, profits, and advantages, many of which are not presently known to SIVA.  DEFENDANTS will continue to be unjustly enriched unless they are enjoined from further use and disclosure of SIVA's Confidential Business Information.

82.   SIVA is therefore entitled to damages as provided by law, as well as injunctive relief.

83.   The aforementioned acts of DEFENDANTS, in wrongfully misappropriating SIVA's Confidential Business Information, were and continue to be intentional, willful and malicious, warranting an award of exemplary damages.

/ / /

/ / /

/ / /

COMPLAINT

3114520v.2

# VI. <u>FOURTH CAUSE OF ACTION</u>

## <u>UNAUTHORIZED ACCESS TO COMPUTERS, COMPUTERS SYSTEMS AND COMPUTER DATA</u>

### (California Penal Code § 502, Against OFFICER DEFENDANTS AND LASATER and DOES 1 through 25)

84.    Plaintiffs repeat and incorporate by this reference the allegations contained in all of the foregoing Paragraphs as though set forth here in full.

85.    OFFICER DEFENDANTS and LASATER knowingly accessed and without permission altered, damaged, deleted, destroyed, and/or otherwise used SIVA's data, computer, computer system, peripherals, and computer network in order to devise and execute an illegal scheme or artifice to defraud, deceive, and/or extort and/or to wrongfully control or obtain money, property or data from SIVA, in violation of California Penal Code § 502.

86.    OFFICER DEFENDANTS and LASATER knowingly and without permission took, copied, and made off with data from SIVA's computers, computer systems, peripherals, and computer networks, in violation of California Penal Code § 502.

87.    OFFICER DEFENDANTS and LASATER knowingly and without permissions provided or assisted in providing a means of accessing SIVA's computer systems, peripherals, and computer networks, in violation of California Penal Code § 502.

88.    OFFICER DEFENDANTS and LASATER knowingly and without permission accessed or caused to be accessed SIVA's computers, computer systems, peripherals, and computer networks, in violation of California Penal Code § 502.

89.    SIVA has suffered damage and loss as a result of OFFICER DEFENDANTS and LASATER's violations of Penal Code § 502. The amount of these damages cannot be determined at this time. SIVA is further entitled to

1    injunctive relief under Penal Code § 502.

2        90.    OFFICER DEFENDANTS and LASATER acted with oppression,

3    fraud, and malice, warranting an award of punitive damages in addition to the

4    actual damages suffered by SIVA.

5                            **VII. FIFTH CAUSE OF ACTION**

6    **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC**

7                                   **RELATIONS**

8                **(Against All DEFENDANTS and DOES 1 through 25)**

9        91.    Plaintiffs repeat and incorporate by this reference the allegations

10    contained in all of the foregoing Paragraphs as though set forth here in full.

11        92.    SIVA enjoys an economic relationship with many customers that

12    would result in an economic benefit to SIVA.

13        93.    DEFENDANTS knew of this relationship and the economic benefit it

14    brought to SIVA because DEFENDANTS worked for SIVA.

15        94.    DEFENDANTS have and continue to engage in wrongful conduct to

16    intentionally disrupt SIVA's relationship with its customers and clients by

17    wrongfully providing customers and clients false information regarding SIVA and

18    drawing current and prospective clients away from SIVA.

19        95.    By engaging in this conduct, DEFENDANTS intended to disrupt the

20    relationship or knew that disruption of the relationship was certain or substantially

21    certain to occur.

22        96.    DEFENDANTS' intentional acts have actually and proximately

23    caused a disruption of the economic relationship SIVA enjoys with its clients by

24    wrongfully drawing current and prospective clients away from SIVA.

25        97.    DEFENDANTS' acts have resulted in a loss of beneficial economic

26    relationships and actual profits to SIVA.

27        98.    The aforementioned acts of DEFENDANTS were and continue to be

28    willful, oppressive, fraudulent, and malicious, warranting an award of punitive

3114520v.2

damages in addition to the actual damages suffered by SIVA.

## VIII. SIXTH CAUSE OF ACTION

## NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

**(Against All DEFENDANTS and DOES 1 through 25)**

99.    Plaintiffs repeat and incorporate by this reference the allegations contained in all of the foregoing Paragraphs as though set forth here in full.

100.   SIVA enjoys an economic relationship with many customers that would result in an economic benefit to SIVA.

101.   DEFENDANTS knew of this relationship and the economic benefit it brings to SIVA because DEFENDANTS worked for SIVA.

102.   DEFENDANTS have and continue to engage in wrongful conduct to negligently interfere with SIVA's relationship with its customers and clients by wrongfully providing customers and clients false information regarding SIVA and drawing current and prospective clients away from SIVA.

103.   By engaging in this conduct, DEFENDANTS intended to disrupt the relationship or knew that disruption of the relationship was certain or substantially certain to occur.

104.   DEFENDANTS' negligent acts have actually and proximately caused a disruption of the economic relationship SIVA enjoys with its clients by wrongfully drawing current and prospective clients away from SIVA.

105.   DEFENDANTS' acts have resulted in a loss of beneficial economic relationships and actual profits to SIVA.

## IX. SEVENTH CAUSE OF ACTION

## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATION

**(Against All DEFENDANTS and DOES 1 through 25)**

106.   Plaintiffs repeat and incorporate by this reference the allegations contained in all of the foregoing Paragraphs as though set forth here in full.

3114520v.2

107.   SIVA had contractual relationships with many of its customers.

108.   DEFENDANTS knew of the contracts.

109.   DEFENDANTS' conduct prevented performance or made performance of the contract more expensive or difficult.

110.   DEFENDANTS intended to disrupt the performance of these contracts or knew that disruption of performance was certain or substantially certain to occur.

111.   SIVA was harmed by this wrongful conduct.

112.   DEFENDANTS' conduct was a substantial factor in causing SIVA's harm.

113.   The aforementioned acts of DEFENDANTS were and continue to be willful, oppressive, fraudulent, and malicious, warranting an aware of punitive damages in addition to the actual damages suffered by SIVA.

## X. EIGHTH CAUSE OF ACTION

### CONVERSION

**(Against All DEFENDANTS and DOES 1 through 25)**

114.   Plaintiffs repeat and incorporate by this reference the allegations contained in all of the foregoing Paragraphs as though set forth here in full.

115.   SIVA has a right to possess its Confidential Business Information as described herein.

116.   DEFENDANTS have willfully interfered with SIVA's ownership and possessory rights to such property, without lawful justification, with every intention of exercising those rights as though they were theirs.  DEFENDANTS' intent to exercise dominion or control over the property is incompatible with, and invasive of, SIVA's rights and has deprived SIVA of its ability to exclusively use and possess the property.

117.   SIVA has been damaged as a result of DEFENDANTS' actions.

118.   SIVA is entitled to damages, the nature and extent of which will be

3114520v.2

1    proven at trial.

2    119.   The aforementioned acts of DEFENDANTS were and continue to be

3    willful, oppressive, fraudulent, and malicious, warranting an award of punitive

4    damages in addition to the actual damages suffered by SIVA.

5    ### XI. NINTH CAUSE OF ACTION

6    ### CIVIL CONSPIRACY

7    **(Against All DEFENDANTS and DOES 1 through 25)**

8    120.   Plaintiffs repeat and incorporate by this reference the allegations

9    contained in all of the foregoing Paragraphs as though set forth here in full.

10    121.   By engaging in the foregoing conduct, including, but not limited to,

11    DEFENDANTS' secret plan to steal Confidential Business Information,

12    selectively solicit key employees and clients of SIVA, and provide Confidential

13    Business Information to a competing business while still employed by or affiliated

14    with SIVA, and doing so with full knowledge of each other's actions,

15    DEFENDANTS entered into an agreement to accomplish an unlawful purpose or

16    to accomplish a lawful purpose by unlawful means.

17    122.   The actions of DEFENDANTS have resulted in actual damages to

18    SIVA in an amount to be determined at trial.

19    123.   The aforementioned acts of DEFENDANTS were and continue to be

20    willful, oppressive, fraudulent, and malicious, warranting an award of punitive

21    damages in addition to the actual damages suffered by SIVA.

22    ### XII. TENTH CAUSE OF ACTION

23    ### BREACH OF FIDUCIARY DUTY

24    **(Against OFFICER DEFENDANTS and DOES 1 through 25)**

25    124.   Plaintiffs repeat and incorporate by this reference the allegations

26    contained in all of the foregoing Paragraphs as though set forth here in full.

27    125.   DEFENDANTS OTT, BAGHOOMIAN and YEAGER were  SIVA's

28    corporate officers and employees with fiduciary duties of loyalty and care to

COMPLAINT

3114520v.2

SIVA. A fiduciary duty imposes on a corporate officer a duty to act with the utmost good faith in the best interest of the corporation. SIVA placed confidence in and relied on Defendants to maintain in the strictest confidence the confidential and proprietary information acquired by them in the course of their employment by SIVA. SIVA also trusted Defendants to be loyal to the company, to act in good faith to further the interests of the company, and to use their judgment in acting on behalf of the company.

126. Defendants breached their fiduciary duties by virtue of their acts and omissions, as alleged herein above, including, but not limited to, stealing SIVA's Confidential Business Information, selectively soliciting key employees and clients, and providing Confidential Business Information to a competing business while they were officers of SIVA, directing SIVA's other employees to withhold information from BULBULYAN, and interfering with SIVA's client relationships. In so doing, OFFICER DEFENDANTS failed to act as a reasonably careful corporate officer would have acted under the same or similar circumstances;

127. SIVA was harmed by OFFICER DEFENDANTS' actions.

128. OFFICER DEFENDANTS' conduct was a substantial factor in causing SIVA's harm.

129. The aforementioned acts of OFFICER DEFENDANTS were and continue to be willful, oppressive, fraudulent, and malicious, warranting an award of punitive damages in addition to the actual damages suffered by SIVA.

### XIII. NINTH CAUSE OF ACTION

### CONCEALMENT

### (Against OFFICER DEFENDANTS, LASATER and CHRISTOPHER and DOES 1 through 25)

130. Plaintiffs repeat and incorporate by this reference the allegations contained in all of the foregoing Paragraphs as though set forth here in full.

3114520v.2

131.   OFFICER DEFENDANTS were in a fiduciary relationship with SIVA and BULBULYAN, as officers and employees of SIVA and business partners of the Plaintiffs.

132.   LASATER and CHRISTOPHER were employees of SIVA and owed a duty of loyalty to their employer.

133.   OFFICER DEFENDANTS, LASATER and CHRISTOPHER intentionally failed to disclose certain facts to SIVA and BULBULYAN, and intentionally and maliciously prevented SIVA and BULBULYAN from discovering certain facts.

134.   SIVA and BULBULYAN did not know of the concealed facts.

135.   OFFICER DEFENDANTS, LASATER and CHRISTOPHER intended to deceive SIVA and BULBULYAN by concealing facts.

136.   Had the omitted information been disclosed, SIVA and BULBULYAN would have taken action that would have prevented harm to the relationship with current and prospective clients caused by the concealment.

137.   Plaintiffs BULBULYAN and SIVA have and will continue to suffer harm to their business, professions, or occupation.

138.   The concealment by OFFICER DEFENDANTS, LASATER and CHRISTOPHER is a substantial factor in causing BULBULYAN'S and SIVA's harm.

## XIV. <u>TENTH CAUSE OF ACTION</u>
## <u>UNJUST ENRICHMENT</u>
### (Against All DEFENDANTS and DOES 1 through 25)

139.   Plaintiffs repeat and incorporate by this reference the allegations contained in all of the foregoing Paragraphs as though set forth here in full.

140.   DEFENDANTS have been enriched by using the Confidential Business Information of Plaintiffs, developed at great cost by Plaintiffs, in DEFENDANTS' competing business venture.

3114520v.2

141.   DEFENDANTS misappropriated the Confidential Business Information of Plaintiffs without permission or justification and without compensation to Plaintiffs.

142.   DEFENDANTS misappropriated the Confidential Business Information of Plaintiffs to further their business interests.

143.   It is against equity and good conscience to permit DEFENDANTS to retain the Confidential Business Information without compensation to Plaintiffs.

144.   On account of the foregoing, Plaintiffs are entitled to an award of damages in an amount to be determined at trial.

145.   On account of the foregoing, Plaintiffs are entitled to equitable relief.

## XIV. <u>TENTH CAUSE OF ACTION</u>

### <u>VIOLATION OF STATUTORY OBLIGATIONS OF EMPLOYEES</u>

### (Cal. Labor Code §§ 2856, 2860 and 2863 Against OFFICER DEFENDANTS, LASATER and CHRISTOPHER and DOES 1 through 25)

146.   Plaintiffs repeat and incorporate by this reference the allegations contained in all of the foregoing Paragraphs as though set forth here in full.

147.   By virtue of the acts and omissions of OFFICER DEFENDANTS, LASATER and CHRISTOPHER, and each of them, as alleged hereinabove, OFFICER DEFENDANTS, LASATER and CHRISTOPHER have breached their statutory duties owed to SIVA pursuant to California Labor Code §§ 2856, 2860 and 2863, by: (a) not keeping SIVA's confidential and proprietary information acquired by DEFENDANTS confidential; and (b) not giving preference to the business of SIVA, as opposed to the competing business interests of DEFENDANTS.

148.   As a direct and proximate result of the actions and omissions of Defendants, and each of them, SIVA has suffered and will continue to suffer, great harm and damage in an amount according to proof at trial.

149.   The aforementioned acts of OFFICER DEFENDANTS, LASATER

1  and CHRISTOPHER were and continue to be willful, oppressive, fraudulent, and
2  malicious, warranting an award of punitive damages in addition to the actual
3  damages suffered by SIVA.

## XV. ELEVENTH CAUSE OF ACTION

## VIOLATION OF THE LANHAM ACT / FEDERAL UNFAIR COMPETITION

### (Section 43 (a) of the Lanham Act, 15 U.S.C. §§ 1125(a), Against All DEFENDANTS and DOES 1 through 25)

150.   Plaintiffs repeat and incorporate by this reference the allegations contained in all of the foregoing Paragraphs as though set forth here in full.

151.   The acts of DEFENDANTS, alleged herein, are likely to deceive consumers and business affiliates as to the origin, source, sponsorship, or affiliation of DEFENDANTS' services, and are likely to cause consumers and business affiliates to believe, contrary to fact, that DEFENDANTS' services are sold, authorized, endorsed, or sponsored by Plaintiffs, or that DEFENDANTS are in some way affiliated with or sponsored by Plaintiffs.

152.   DEFENDANTS' unauthorized use in commerce of the Confidential Business Information as alleged herein constitutes use of a false designation of origin, and misleading description and representation of fact.

153.   Upon information and belief, DEFENDANTS' conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection or association of DEFENDANTS with Plaintiffs.

154.   In the alternative, Plaintiffs its employees relative to the business operated by Plaintiffs.  To the extent that the Confidential Business Information was created by Plaintiffs' employees during their employment, such intellectual property should be deemed owned by Plaintiffs.  The use of such intellectual property by the DEFENDANTS is infringing insofar as the DEFENDANTS are

3114520v.2

claiming to be the source of the services using intellectual property created by Plaintiffs or its employees.

155.   DEFENDANTS' conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §§ 1125(a).

156.   DEFENDANTS' conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff's, and to their goodwill and reputation, and will continue to both damage.  Plaintiffs and confuse the public unless enjoined by this court.  Plaintiffs have no adequate remedy at law.

157.   Plaintiffs are entitled to, among other relief, injunctive relief, and in award of actual damages, DEFENDANTS' profits, enhanced damages and profits, reasonable attorneys fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with pre-judgment and post-judgment interest..

## XVI. TWELFTH CAUSE OF ACTION
## UNFAIR COMPETITION
### (Cal. Bus. and Prof. Code §§  17200 *et seq*., Against All DEFENDANTS and DOES 1 through 25)

158.   Plaintiffs repeat and incorporate by this reference the allegations contained in all of the foregoing Paragraphs as though set forth here in full.

159.   The acts of DEFENDANTS, alleged herein, constitute unlawful, unfair, deceptive and fraudulent business practices in violation of the California Unfair Competition Law ("UCL"), Cal Bus. & Prof. Code § 17200.

160.  SIVA is informed and believes, and thereon alleges, that DEFENDANTS have willfully and in conscious disregard for SIVA's rights and its business, committed unfair, unlawful and deceptive business practices including, but not limited to, stealing SIVA's Confidential Business Information, using for DEFENDANTS' own purposes, and adversely to the interests of SIVA

and its business venture, SIVA's Confidential Business Information, and wrongfully interfering with SIVA's business.

161.   The aforementioned acts of DEFENDANTS were and continue to be willful, oppressive, fraudulent, and malicious, warranting an award of punitive damages in addition to the actual damages suffered by SIVA.

162.  As a direct and proximate result of DEFENDANTS' willful, improper, and unlawful conduct, SIVA has suffered, and will continue to suffer, great harm and damage in an amount according to proof at trial.   SIVA will continue to be irreparably damaged unless DEFENDANTS are enjoined from further committing unfair and unlawful business practices against SIVA and SIVA's business.

## XVII. THIRTEENTH CAUSE OF ACTION
## HONEST SERVICES FRAUD
### (18 U.S.C. §§ 1346, 1341 ad 1343, Against OFFICER DEFENDANTS and DOES 1 through 25)

163.   Plaintiffs repeat and incorporate by this reference the allegations contained in all of the foregoing Paragraphs as though set forth here in full.

164.   The acts of OFFICER DEFENDANTS, alleged herein, constitute an unlawful scheme or artifice to defraud and deprive SIVA and BULBULYAN of the intangible right of honest services.

165.   The aforementioned acts of OFFICER DEFENDANTS were and continue to be willful, oppressive, fraudulent, and malicious, warranting an award of punitive damages in addition to the actual damages suffered by SIVA.

166.  As a direct and proximate result of OFFICER DEFENDANTS' willful, improper, and unlawful conduct, SIVA has suffered, and will continue to suffer, great harm and damage in an amount according to proof at trial.

/ / /

/ / /

3114520v.2

# XVIII. FOURTEENTH CAUSE OF ACTION

## DEFAMATION

### (BULBULYAN Against ALL DEFENDANTS and DOES 1 through 25)

167.  Plaintiff BULBULYAN repeats and incorporates by this reference the allegations contained in all of the foregoing Paragraphs as though set forth here in full.

168.  BULBULYAN is informed and believes and on that basis alleges that DEFENDANTS have made numerous defamatory statements to SIVA's clients regarding BULBULYAN, including but not limited to:

       A.    BULBULYAN is a "conman";

       B.    BULBULYAN is depressed and "losing it";

       C.    BULBULYAN is going through a tough time and therefore losing all his clients;

       D.    BULBULYAN is going through a divorce;

       E.    BULBULYAN is not the same as he used to be;

       F.    SIVA has run out of money and is unable to pay its employees;

       G.    SIVA is not capable of servicing its clients properly;

       H.    SIVA is liquidating and closing their doors;

       I.    OTT relocated to Los Angeles from Vancouver, Washington to help his friend BULBULYAN in BULBULYAN's time of need.

169.  Upon information and belief, in addition to defaming BULBULYAN and SIVA to clients, DEFENDANTS have also posted defamatory and false reviews on Glassdoor.com, and Yelp.com, calling BULBULYAN a "compulsive liar," a "conman extraordinaire," a "scam artist" and a "two bit hustler" and claiming that SIVA "ripped off" clients, among other false statements.

170.  SIVA's clients reasonably understood that the statements were about BULBULYAN.

COMPLAINT

3114520v.2

171.   Because of the facts and circumstances known to SIVA's clients, the statements were intended to injure BULBULYAN in his occupation or to expose him to hatred, contempt, ridicule, or shame, or to discourage current and prospective clients from associating or dealing with BULBULYAN and SIVA.

172.   DEFENDANTS failed to use reasonable care to determine the truth or falsity of the statements.

173.   The statements made by DEFENDANTS are false.

174.   DEFENDANTS knew the statements were false, or had serious doubts about the truth of the statements.

175.   Plaintiff BULBULYAN has and will continue to suffer harm to his business, professions, or occupation.

176.   The statements by DEFENDANTS are a substantial factor in causing BULBULYAN'S harm.

177.   DEFENDANTS have divulged highly confidential information in their false statements in an attempt to sabotage a $115,000,000.00 project that is three years in the making.  These attempts by DEFENDANTS have caused SIVA to lose several investors and over $20,000,000.00 in investment dollars, as well as losing a significant component of the project as a direct result of the false statements made by DEFENDANTS.

178.   DEFENDANTS acted with oppression, fraud, and malice, warranting an award of punitive damages in addition to the actual damages suffered by BULBULYAN.

## XIX. FIFTEENTH CAUSE OF ACTION
## TRADE LIBEL

(Against ALL DEFENDANTS and DOES 1 through 25)

179.   Plaintiffs repeat and incorporate by this reference the allegations contained in all of the foregoing Paragraphs as though set forth here in full.

180.   BULBULYAN and SIVA are informed and believe and on that basis

allege that DEFENDANTS have made numerous defamatory statements to SIVA's clients that disparaged the quality of services provided by BULBULYAN and SIVA, including but not limited to:

      A.     BULBULYAN is a "conman";

      B.     BULBULYAN is depressed and "losing it";

      C.     BULBULYAN is going through a tough time and therefore losing all his clients;

      D.     BULBULYAN is going through a divorce;

      E.     BULBULYAN is not the same as he used to be;

      F.     SIVA has run out of money and is unable to pay its employees;

      G.     SIVA is not capable of servicing its clients properly;

      H.     SIVA is liquidating and closing their doors;

      I.     OTT relocated to Los Angeles from Vancouver, Washington to help his friend BULBULYAN in BULBULYAN's time of need.

181.   Upon information and belief, in addition to defaming BULBULYAN and SIVA to clients, DEFENDANTS have also posted defamatory and false reviews on Glassdoor.com, and Yelp.com, calling BULBULYAN a "compulsive liar," a "conman extraordinaire," a "scam artist" and a "two bit hustler" and claiming that SIVA "ripped off" clients, among other false statements.

182.   SIVA's clients reasonably understood that the statements were about BULBULYAN and SIVA.

183.   The statements made by DEFENDANTS are false.

184.   DEFENDANTS failed to use reasonable care to determine the truth or falsity of the statements.

185.   DEFENDANTS knew or should have recognized that SIVA's clients might act in reliance on the statements, causing financial loss to BULBULYAN and SIVA.

186.   DEFENDANTS knew the statements were false and acted with reckless disregard of the truth or falsity of the statements.

187.   Plaintiffs BULBULYAN and SIVA have and will continue to suffer harm to their business, professions, or occupation.

188.   The statements by DEFENDANTS are a substantial factor in causing BULBULYAN'S and SIVA's harm.

189.   DEFENDANTS have divulged highly confidential information in their false statements in an attempt to sabotage a $115,000,000.00 project that is three years in the making.  These attempts by DEFENDANTS have caused SIVA to lose several investors and over $20,000,000.00 in investment dollars, as well as losing a significant component of the project as a direct result of the false statements made by DEFENDANTS.

190.   DEFENDANTS acted with oppression, fraud, and malice, warranting an award of punitive damages in addition to the actual damages suffered by BULBULYAN AND SIVA.

## XX. SIXTEENTH CAUSE OF ACTION
## BREACH OF CONTRACT
### (SIVA Against LASATER and CHRISTOPHER)

191.   Plaintiffs repeat and incorporate by this reference the allegations contained in all of the foregoing Paragraphs as though set forth here in full.

192.   LASATER and CHRISTOPHER both executed Contracts of Engagement when hired to work at SIVA. (True and correct copies of the Contracts of Engagement are attached to the Complaint as Exhibits "A" and "B", respectively)  CHRISTOPHER executed a Contract on February 19, 2018, and LASATER executed a Contract on March 5, 2018.  The Contracts state in relevant part:

"Now, therefore, in consideration of the faithful performance of the obligations set forth herein and other good and valuable consideration,

36
COMPLAINT

3114520v.2

the receipt and sufficiency of which are hereby acknowledged, *The Consultant* [LASATER/CHRISTOPHER] and *The Client* [SIVA] hereby agree as follows.

**6.  Confidentiality Agreement**.  In the event *The Client* discloses information to The Consultant that *The Client* considers to be secret, proprietary or nonpublic (collectively "Confidential Information") and so notifies *The Consultant*, *The Consultant* agrees to hold such Confidential Information in confidence.  Confidential Information shall be used by *The Consultant* only in connection with the services rendered by it under this Agreement and shall not be disseminated without *The Client*'s written approval, which shall be within *The Client*'s sole discretion.  Confidential information shall not be deemed to include which a) is in or becomes in the public domain without violation of this Agreement by *The Client*, or b) is rightfully received from a 3rd party having no obligation to *The Client* to keep such information confidential and without violation of this Agreement.  In reciprocal, *The Client* agrees to hold confidential all trade secrets of the proprietary methods employed by *The Consultant* in fulfillment of the services it renders pursuant to this Agreement that are designated as trade secrets or proprietary methods by *The Consultant* in writing to *The Client*."

193.  SIVA performed all, or substantially all, of the significant things required by SIVA under the Contract.

194.  LASATER and CHRISTOPHER failed to comply with their obligations under Section 6 of the Contract.

195.  SIVA was harmed by the failure of LASATER and CHRISTOPHER to comply with their obligations under the Contract.

196.  The failure of LASATER and CHRISTOPHER to comply with their

obligations under the Contract was a substantial factor in causing SIVA's harm.

## XXI. SEVENTEENTH CAUSE OF ACTION

## MONEY HAD AND RECEIVED

### (SIVA Against OTT)

197.   Plaintiffs repeat and incorporate by this reference the allegations contained in all of the foregoing Paragraphs as though set forth here in full.

198.   OTT has received money from one or more SIVA clients in excess of $5,000 that was the property of and intended for the benefit of SIVA.

199.   The money was not used for the benefit of SIVA and OTT has not given the money to SIVA.

## XXII. EIGHTEENTH CAUSE OF ACTION

## DECLARATORY JUDGMENT

### (SIVA Against All DEFENDANTS and DOES 1 through 25)

200.   Plaintiffs repeat and incorporate by this reference the allegations contained in all of the foregoing Paragraphs as though set forth here in full.

201.   SIVA owns all right, title and interest, including copyright where applicable, in and to any Confidential Business Information created during or prior to the course of employment by the OFFICER DEFENDANTS at SIVA.

202.   An actual and justifiable controversy exists between SIVA and DEFENDANTS concerning ownership of the Confidential Business Information, warranting the Court's determination of the issue.

203.   SIVA is entitled to a judicial declaration that it owns all right, title and interest, including copyright where applicable, in and to any and all Confidential Business Information created prior to and during the course of employment by the OFFICER DEFENDANTS at SIVA.

## XXIII.  PRAYER FOR RELIEF

Wherefore, Plaintiffs pray, jointly and severally, for preliminary and final relief and judgment against DEFENDANTS, jointly and severally, as follows

3114520v.2

(entirely and alternatively):

1.     That a temporary restraining order, and a preliminary and permanent injunction is granted enjoining DEFENDANTS from (a) unlawfully using and misappropriating SIVA's Confidential Business Information, (b) unfairly competing with SIVA; (c) soliciting any of SIVA's clients and customers; and/or (d) engaging in further wrongful acts of defamation.

2.     That Plaintiff SIVA be awarded actual, compensatory, and restitution damages in an amount to be determined at trial;

3.     The all profits wrongfully obtained by DEFENDANTS be disgorged and awarded to Plaintiff SIVA.

4.     That Plaintiff SIVA be allowed to conduct an audit and accounting of all financial records of DEFENDANTS;

5.     That Plaintiff SIVA be awarded exemplary and/or punitive damages;

6.     That an Order be entered finding that DEFENDANTS are jointly and severally liable as co-conspirators for the torts and wrongful acts they conspired to commit and committed and all damages awarded, including enhanced damages and attorneys' fees;

7.     That an Order be entered finding that SIVA owns all right, title and interest, including copyright where applicable, in and to any and all Confidential Business Information created prior to and during the course of employment by the OFFICER DEFENDANTS at SIVA.

8.     That DEFENDANTS be ordered to pay all damages allowed under the law for their unfair competition;

9.     That one or more DEFENDANTS have violated Cal. Penal Code § 502, for which Plaintiff SIVA be awarded compensatory damages and attorneys' fees;

10.     That Defendants be enjoined from making further false and/or defamatory statements;

3114520v.2

11.    That Plaintiffs be awarded their costs, expenses and attorney fees incurred herein; and

12.    For such other and further relief as the Court deems just and proper.

## XVII. <u>JURY VERDICT DEMAND</u>

Plaintiffs respectfully request trial by jury.

Respectfully submitted,

Dated:  August 10, 2018

**WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP**

By:  /s/ Ian A. Stewart

Ian A. Stewart
Dean A. Rocco
Attorneys for SIVA Enterprises and Avis Bulbulyan

COMPLAINT

3114520v.2